Dated at Burlington, in the District of Vermont, this 3 day of December, 1992.

**Levenia E. MATTHEWS on Behalf of Devon and Lou Retha MATTHEWS, Plaintiff,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.**

**Civ. A. No. 91–303–SLR.**

United States District Court, D. Delaware.

Sept. 11, 1992.

William Schab, of Schab & Barnett, P.A., Georgetown, DE, and Kirk B. Roose, Oberlin, OH, for plaintiff.

Carolyn T. Greene, Asst. U.S. Atty., U.S. Dept. of Justice, Wilmington, DE (Eileen Bradley, Dorothea Lundelius, and Deborah Fitzgerald, U.S. Dept. of Health and Human Services, Philadelphia, PA, of counsel), for defendant.

## MEMORANDUM OPINION

SUE L. ROBINSON, District Judge.

### PROCEDURAL BACKGROUND

This action is brought by plaintiff Levenia Matthews [1] on behalf of her two children Devon Matthews and Lou Retha Matthews challenging the final decision of the Secretary of Health and Human Services (the "Secretary") denying survivor benefits under the Social Security Act. The children were originally placed in the Matthews' home as foster children, but later adopted.

Levenia Matthews, on behalf of Lou Retha and Devon, filed an application for child insurance benefits on September 19, 1987. (Docket item, "D.I.", 31) The application was denied initially and on request for reconsideration because the State of Delaware retained parental control and responsibility after Mr. Matthews passed away. (D.I. 40)

The case was considered by an Administrative Law Judge ("ALJ") before whom plaintiff appeared, represented by counsel. In a decision dated November 30, 1989, the ALJ concluded that adoption proceedings for both Devon and Lou Retha were started before Mr. Matthews' death and completed within a two year period of time after his death. (D.I. 8 at 12–15) Furthermore, the ALJ determined that the children received regular contributions for support from the Division of Social Services of the State of Delaware and, therefore, equitable adoption was not applicable. Consequently, the ALJ denied child insurance benefits. The Appeals Counsel denied plaintiff's request for review (D.I. 8 at 5); therefore, the decision of the ALJ now stands as the final decision of the Secretary. This appeal followed.

### FACTS

Levenia Matthews and James Matthews were initially the foster parents of Devon Wright, born June 8, 1983, and Lou Retha Evans, born July 14, 1981. In 1983, both children were placed in the Matthews'

home. At that time, Devon was approximately two months old, and Lou Retha was approximately two and one half years old. Each child received foster care payments of $158.00 per month from the state of Delaware until their adoption was formalized in June 1986. (D.I. 8 at 14)

On September 13, 1985, Mr. and Mrs. Matthews filed a petition for adoption in the Family Court for the adoption of Devon. (D.I. 8 at 89) Attached to the petition was a consent to adoption signed by the Director of Children Services which had vested parental rights of Devon Wright. (D.I. 8 at 92) Parental rights in Devon were transferred to the Delaware Department of Services for Children, Youth, and Their Families on August 14, 1985. (D.I. 8 at 79) Before a final decree of adoption could be entered, the Court ordered a social study report pursuant to 13 Del. C. § 912 to be performed. (D.I. 8 at 90) Five days after the petition was signed, Mr. Matthews unfortunately passed away from colon cancer. (D.I. 8 at 51) A final decree of adoption of Devon was not entered until June 12, 1986, almost six months after Mr. Matthews' death.

With respect to Lou Retha Evans, the record indicates that on April 1, 1985 a social worker assigned to the case indicated in a form titled "Update—Plan For Child in Care" that Mr. and Mrs. Matthews had stated a desire to adopt Lou Retha. (D.I. 8 at 57) A goal was established to terminate parental rights so that adoption proceedings could occur. (D.I. 8 at 57) In May 1985, a social worker recommended that termination of parental rights be followed and adoption considered. (D.I. 8 at 62) Parental rights in Lou Retha were not terminated until January 2, 1986, three months after Mr. Matthews' death. Mrs. Matthews, thereafter, filed a petition for adoption on April 22, 1986. (D.I. 8 at 63) A Final Decree of Adoption was not entered until June 12, 1986. (D.I. 8 at 68) In an addendum to the Final Decree of adop-

1. Levenia Matthews remarried after her husband's death and is now known as Levenia Wharton. She will be referred to as Levenia Matthews throughout the course of this Memorandum Opinion.

tion, the Judge signing the order provided the following:

It is further ordered that the name of James H. Matthews, deceased September 18, 1985, late husband of Levenia Matthews shall be recorded on the Certificate of Live Birth, as the father of the child, since it had been his intent to be a joint Petitioner to adopt this child.

(D.I. 8 at 70–71)

During the administrative law hearing, Mrs. Matthews testified that the couple contributed more to the care of the two children than the state contributed. (D.I. 8 at 24) She indicated that the couple had intended to adopt the children prior to Mr. Matthews' death, but due to administrative delays, the formal decrees were not entered until after his death. (D.I. 8 at 28) Additionally, Matthews provided that the social worker assigned to the case indicated that she had "checked it out" and advised petitioner that the children would receive Mr. Matthews' social security payments. (D.I. 8 at 28)

STANDARD OF REVIEW

■ Section 405(g) provides that on judicial review of the Secretary's initial decision-making, "[t]he findings of the Secretary as to any fact, *if supported by substantial evidence*, shall be conclusive...." (Emphasis added) The statutory standard of "substantial evidence" prescribed by 405(g) has been considered by the Supreme Court in various contexts:

The National Labor Relations Act, § 10(e), in its original form, provided that the NLRB's finding of fact "if supported by evidence, shall be conclusive." 49 Stat. 454. The Court said this meant "supported by substantial evidence" and that this was "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 [59 S.Ct. 206, 217, 83 L.Ed. 126] ... (1938). The Court has adhered to that definition in varying statutory situations. *See NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 [59 S.Ct. 501, 505, 83 L.Ed. 660] ... (1939).

*Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Thus in the context of judicial review under 405(g),

[a] single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion.

*Brewster v. Heckler*, 786 F.2d 581, 584 (3d Cir.1986), *quoting Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir.1983).

Furthermore, the Secretary must evaluate the record under the proper legal standard. *Purter v. Heckler*, 771 F.2d 682 (3d Cir.1985). The ALJ's decision must comply with proper procedure and apply proper legal standards. *Coria v. Heckler*, 750 F.2d 245 (3d Cir.1984).

DISCUSSION

In the present action, plaintiff argues that the ALJ failed to apply the proper legal standard. The Secretary contends that the children are not entitled to benefits because the adoption fails to fall within the guidelines of 42 U.S.C. § 416(e) or 42 U.S.C. § 416(h)(2)(A). In both instances, the Secretary argues that receipt of foster child payments from the Department · on behalf of Devon and Lou Retha remove the children from application of 42 U.S.C. § 416(e) and is evidence that the Department retained legal custody of the children until the adoption was final.

Plaintiff and the Secretary agree that 42 U.S.C. § 416(e) is not applicable. (D.I. 13, 15) The Court's review turns, therefore, upon the application of 42 U.S.C. § 416(h)(2)(A), which provides:

In determining whether an applicant is the child or parent of a fully or currently insured individual for purposes of this subchapter, the Secretary shall apply such law as would be applied in determining the devolution of intestate personal property by the courts of the State in which such insured individual is domi-

ciled at the time such applicant files application, or, if such insured individual is dead, by the courts of the State in which he was domiciled at the time of his death, or, if such insured individual is or was not so domiciled in any State, by the courts of the District of Columbia. Applicants who according to such law would have the same status relative to taking intestate personal property as a child or parent shall be deemed such.

Plaintiff contends that the Matthews children may be considered equitably adopted children of Mr. Matthews, and thus entitled to benefits. As the Code of Federal Regulations provides:

You may be eligible for benefits as an equitably adopted child if the insured had agreed to adopt you as his or her child but the adoption did not occur. The agreement to adopt you must be one that would be recognized under State law so that you would be able to inherit a child's share of the insured's personal property if he or she were to die without leaving a will. The agreement must be in whatever form, and you must meet whatever requirements for performance under the agreement, that State law directs. If you apply for child's benefits after the insured's death, the law of the State where the insured had his or her permanent home at the time of his or her death will be followed. If you apply for child's benefits during the insured's life, the law of the State where the insured had his or her permanent home at the time of your application will be followed.

20 C.F.R. § 404.359.

■ The regulations require the Court to make an analysis of Delaware statutory law or case law to determine whether the principles of equitable adoption are recognized. The Delaware Superior Court in *Carter v. State Bureau of Child Support Enforcement,* 444 A.2d 271 (1982) stated:

Adoption by estoppel is usually applied to someone who has expressed the intention to adopt, but has not followed through with the statutory formalities. The doctrine finds its most frequent application where a person is permitted to

inherit as an adopted child from his foster parents.

*Id.* at 273 (without citations). Adoption by estoppel was not applied because the appellant never expressed an intention to adopt the child. The court failed, however, to specify the form or the requirements for performance of an adoption by estoppel. *See* 20 C.F.R. § 404.359.

The court in *H.M. v. State of Delaware,* No. 80A–FE–23, slip op. at 2 (Del.Super.Ct.1981), appears to associate adoption by estoppel or equitable adoption with the common law doctrine of equitable estoppel by indicating that equitable estoppel is "sometimes inaccurately called 'adoption by estoppel'". *Id.* The court, however, refused to apply the doctrine because there was a state statute directly on point.

The Court of Chancery in *Lewis v. Fleming,* C.A. No. 6857; Register of Wills 78065, slip op. at 1, 1984 WL 137720 (Del. Ch.1984), determined whether the petitioner should inherit from a decedent's estate as a niece or as a daughter under the concept of equitable adoption. The court never affirmatively set forth the elements creating an equitable adoption but provided:

[E]ven assuming arguendo the viability of such a theory of equitable adoption or adoption by estoppel in this State, the facts of the matter do not support such a claim.

*Id.* at 2. The court, in denying the application of an equitable adoption, looked to the following evidence and provided:

By her own admission the petitioner has known for over 40 years that the decedent was not her natural mother and, also, that she had never been legally adopted by the decedent. The evidence indicates that the petitioner was raised by her grandmother, Fannie Lewis, and not by the decedent. She concedes that even as a child she called the decedent "Helen" and not "mother." Other members of the Lewis family at the time were aware that Ophelia, not Helen, was her real mother, and even her grandmother who raised her referred to her as "Helen's niece." *There is no evidence to*

*indicate that the petitioner ever knowingly acted to her detriment in any way over the past 40 years on the mistaken belief that the decedent was her mother.*

*Id.* at 2 (emphasis added).

Although it does not appear that any Delaware court has applied adoption by estoppel in order to create a parent-child relationship, the preceding case law demonstrates, to some extent, that estoppel may be used to establish a parental bond. As indicated, the caselaw reflects that adoption by estoppel is grounded in the application of equitable estoppel. The court in *Carter v. State, Bureau of Child Support,* 444 A.2d at 272, provides four different ways estoppel may be used to establish support of a child. Among the four ways, are what the Court terms, "adoption by estoppel" and "equitable estoppel". *Id.* at 272, 273. The court clearly distinguishes between the two, and implies that the element establishing both are different. With respect to adoption by estoppel, the court in *Carter* examined the intent of the party with whom a parental relationship is attempting to be formed. Further guidance is lacking.

Similarly, however, other state courts have applied equitable adoption to protect the interest of the child "when the adoptive parent 'has expressly agreed to adopt such child, or by his acts and conduct has placed himself in a position where it would be inequitable to permit it to be asserted that the child was not adopted.' " *Stanley v. Secretary of Health, Education and Welfare,* 356 F.Supp. 793 (W.D.Mo.1973); *Jones v. Schweiker,* No. 81–0604–CV–W–6, slip op. at 3 (W.D.Mo.1982). Clear, cogent and convincing evidence must be presented so that there is no reasonable doubt in the fact finder's mind. *Stanley,* 356 F.Supp at 800.

▉ In the present case, the Court finds that plaintiff has presented sufficient evidence to establish that Mr. Matthews intended to adopt both Devon and Lou Retha prior to his death. (D.I. 8 at 57, 62, 70–71, 89, 92) The facts indicate that the children spent a majority of their lives living with Mr. and Mrs. Matthews. (D.I. 8 at 22–30) In the case of Devon, the record reflects that a petition for adoption was signed and filed prior to Mr. Matthews' death, and that the parental rights of Devon's natural parents were terminated also prior to Matthews' death. (D.I. 8 at 79, 89) In the case of Lou Retha, the record indicates that the petition for adoption was not signed until after Matthews' death and that the parental rights of Lou Retha's natural parents were not terminated until after Matthews' death. (D.I. 8 at 56, 63) However, there is evidence that the Matthews intended to adopt Lou Retha as early as April 1985. (D.I. 8 at 57) Furthermore, the record demonstrates that investigation proceedings inquiring into the status of Lou Retha's natural parents were started prior to the death of Matthews, but due to administrative delays the investigation was held up until after his death. (D.I. 8 at 59–62) Also convincing was the final order of adoption for Lou Retha reflecting that Mr. Matthews, although deceased, was to be considered a joint petitioner and the father of the child. (D.I. 8 at 70–71) The Court also recognizes Mrs. Matthews' testimony in which she indicates that she contributed a greater share of support than the state contributed. (D.I. 8 at 28) The Court concludes, in light of Mr. Matthews' clear intention to adopt the children, that the Secretary's decision to deny benefits, based on the fact that support payments were made by the Division of Social Services, is not supported by substantial evidence under the relevant caselaw.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment (D.I. 10) is granted and defendant's motion for summary judgment (D.I. 12) is denied.